Below is an opinion of the court.

_David W. Hercher_
DAVID W. HERCHER
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | Case No. 22-61720-dwh7 |
| **Justin Lee Hoover** and **Juli Ann Mari Hoover,** | MEMORANDUM DECISION[1] |
| Debtors. | |
| **Roderick Kyle Yanke,** | Adv. Proc. No. 23-06007-dwh |
| Plaintiff, | |
| v. | |
| **Juli Ann Mari Hoover,** | |
| Defendants. | |

## I.      Introduction

In this action, Roderick Yanke claims that Juli Hoover owes him a debt,

and he asks that it be determined to be nondischargeable in her chapter 7

---

[1] This disposition is specific to this action. It may be cited for whatever
persuasive value it may have.

Page 1 – MEMORANDUM DECISION

bankruptcy case. Because this decision addresses both Juli Hoover and codebtor Justin Hoover, who share a last name, I refer to them by their first names. Both Yanke and Juli are nonlawyers who represent themselves in this action.

For the following reasons, I find that Juli had been indebted to Yanke before they divorced in 2019, but the debt did not survive the divorce.

## II.  Procedural background

The documents that the parties and I treat as the complaint and answer are the undated letter that Yanke filed on March 2, 2023,[2] and the undated letter that Juli filed on May 19.[3]

In the complaint, Yanke asserts a reimbursement claim against Juli for $10,000 based on her failure to pay a car loan for which they were both liable. He says she was required to pay the loan in connection with their separation before their divorce. He asks that the debt not be discharged.

In the answer, Juli alleges, among other things, that the divorce decree "included nothing about property and payment for debts."

## III.  Facts

While Yanke and Juli married, they were jointly obligated on a $10,000 loan secured by a Jeep. They separated several months before the divorce. Shortly after the separation, they agreed that Juli would take possession of the Jeep.

_____

[2] ECF No. 1.
[3] ECF No. 13

Page 2 – MEMORANDUM DECISION

Yanke said that they agreed that Juli would make the Jeep payments and refinance it in her name so he would no longer be liable. He offered in evidence, and I admitted, a one-page, handwritten document[4] that includes the notation "Cars" and under that, "Juli keeps & pays for Jeep until able to finance in own name." He said that she wrote the document as they discussed dividing their property soon after they separated.

Juli did not agree that the handwritten document reflected her handwriting or that she had agreed unconditionally to make the Jeep payments and to refinance it. She did agree that she received the Jeep, but she said that her agreement to make payments on it and to refinance it to take him off the loan was conditioned on her ability to afford the payments and to obtain a refinance loan—and she turned out to have insufficient income and credit to do so. She said, and he did not dispute, that she informed him several times of her inability to pay and her desire that he take the Jeep back to dispose of it, but he declined.

Juli later surrendered the Jeep to the secured lender, and Yanke paid $10,000 to prevent the lender from suing. His claim for reimbursement of that amount is the debt that he requests be excepted from Juli's discharge.

The parties were divorced in Clark County, Washington, Superior Court. The divorce decree[5] is attached to Juli's answer, which I admitted in evidence

---

[4] ECF No. 18.
[5] ECF No. 13-1.

over Yanke's objection. The basis for his objection was that the decree was prepared hastily and mistakenly made no reference to their debts.

## IV. Discussion

### A. *Parties' claims and defenses*

#### 1. Statutory basis for Yanke's dischargeability claim

Yanke asks that his claim be excepted from Juli's discharge because she was "supposed to have this loan removed out of my name after our divorce."[6]

The kinds of debt that are not included in a chapter 7 bankruptcy discharge are specified in 11 U.S.C. § 523(a). Yanke does not identify the statutory ground for excepting from discharge the debt he claims Juli owes him. The only one of the 523(a) categories that appears relevant is 523(a)(15), which applies to a debt "to a spouse, former spouse, or child of the debtor . . . that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record . . .." Here, Juli is a debtor.

#### 2. Juli's defenses

At trial, Juli denied having unconditionally agreed to pay the Jeep debt. She also advanced at trial the argument, first raised in her answer, that the decree "included nothing about property and payment for debts."

---

[6] ECF No. 1 at 1.

### B.    The agreement

I find that the hand-written notation that Juli would make the Jeep payments until she had refinanced it in her own name was made by Juli, she in fact made that agreement, and her promise was not conditioned on her ability to pay or to obtain refinancing.

In return for making that agreement, she had use of the Jeep. The agreement implicitly required Yanke to release his ownership interest in the Jeep upon the refinance. Had there been equity, she would have been entitled to all of it. That the agreement turned out to have been a bad deal for her does not make it unenforceable. Had she performed, the lender would not have had any claim against Yanke, and he would not have had to pay the lender. Her breach damaged him by the amount of his $10,000 payment.

### C.    The divorce decree

#### 1.    Statutes

With irrelevant exceptions, under 28 U.S.C. § 1738 (the federal Full Faith and Credit Act), a state court's judgment has the same effect in a federal court as it would have in the courts of that state.[7]

The parties were divorced in Washington State. Revised Code of Washington § 26.09.070 addresses separation contracts. Under subsection (1), spouses "may enter into a written separation contract

---

[7] Hesse v. Sprint Corp., 598 F.3d 581, 588 (9th Cir. 2010) (acknowledging the general rule as well as exception for "constitutionally infirm" state-court judgments).

providing for . . . the disposition of any property owned by both or either of them . . . ." Although that subsection does not mention liabilities, it also does not limit the subjects of a separation contract to disposition of property. Because property is commonly encumbered by security interests securing indebtedness, an agreement for disposition of encumbered property necessarily must address at least the secured debt. The notion that a separation contract can and often will address secured debt is consistent with paragraph 10 of the mandatory divorce decree form that the parties used, which is discussed below. In that paragraph, parties may require one of them to pay debts "as required by the separation contract"—if a separation contract is described elsewhere in the decree. That notion is also consistent with custom and practice, as reflected in Washington appellate decisions referring to separation contracts addressing debts.[8]

Under 26.09.070(3), when the parties divorce after making a separation contract, the contract binds the court unless the courts finds the agreement unfair at the time of execution.

Section 26.09.070(5), requires, in relevant part, that the contract "be set forth in the decree . . ., or filed in the action or made an exhibit and incorporated by reference . . . ."

---

[8] *See, e.g., Matter of* Est. of Petelle, 462 P.3d 848, 849 (Wash. 2020) (separation contract "divided assets and liabilities").

## 2. Merger

In a 1997 decision of the Washington Court of Appeals, *Kelly-Hansen v. Kelly-Hansen*,[9] the court addressed the effect of two predivorce separation contracts not addressed in the divorce decree (the label given to a Washington divorce judgment[10]) on the spouses' predivorce agreements.

The spouses, Kimberly and Steven, had two predivorce, property-related separation agreements, the first an oral agreement in 1988 and the second a written one in 1989. Their 1989 divorce decree did not mention either agreement. In later litigation over the amount Steven owed Kimberly, Steven relied on the 1988 agreement, and Kimberly relied on the 1989 agreement.[11] They each argued that the other's position was barred by res judicata.[12]

The court described the principle of res judicata followed by Washington State appellate courts:

> When res judicata is used to mean claim preclusion, it compasses the idea that when the parties to two successive proceedings are the same, and the prior proceeding culminated in a final judgment, a matter may not be relitigated, or even litigated for the first time, it if could have been raised, and in the exercise of reasonable diligence should have been raised, in the prior proceeding.[13]

The court said that, after the state supreme court has concluded that a matter could and should have been litigated earlier, it "has often

---

[9] 941 P.2d 1108 (Wash. Ct. App. 1997).
[10] Rev. Code Wash. § 26.09.010(5).
[11] *Kelly-Hansen*, 941 P.2d at 1109–10.
[12] *Kelly-Hansen*, 941 P.2d at 1111.
[13] *Kelly-Hansen*, 941 P.2d at 1112 (footnotes omitted).

implemented its conclusion by saying that all parts of a successful claim are merged in the final judgment, . . . or that a party cannot 'split' his or her claim, thus generating a multiplicity of actions."[14]

The court of appeals then described the operation in Washington of res judicata specifically in divorces:

> [I]n the dissolution situation . . ., a party who claims a share of the property being distributed can, and in the exercise of reasonable diligence should, bring to the attention of the court any previous agreement that allegedly affects the distribution. At least generally, then, a pre-dissolution separation agreement merges into the final dissolution decree, and it may not later be used as a basis for altering the decree's distribution of the parties' property (except, of course, to the extent that the decree sets it forth or incorporates it by reference).[15]

That result, the court observed, is consistent with 26.09.070(5), which requires that a separation agreement "be set forth in the decree . . ., or filed in the action or made an exhibit and incorporated by reference . . .."[16]

Applying those principles to the two separation agreements at issue in *Kelly-Hansen*, the court concluded that each of the two agreements "merged in the final decree, and . . . it cannot now be relied on as a basis for altering the distribution of property made by that decree."[17]

---

[14] *Kelly-Hansen*, 941 P.2d at 1113 (footnotes omitted).
[15] *Kelly-Hansen*, 941 P.2d at 1115 (footnote omitted).
[16] *Kelly-Hansen*, 941 P.2d at 1115.
[17] *Kelly-Hansen*, 941 P.2d at 1115.

Case 23-06007-dwh    Doc 43    Filed 10/11/23

### 3. The decree text

Yanke and Juli used a preprinted form for the divorce decree and completed it by hand. Four paragraphs of the form—5 and 10 through 12—bear on their debts.

#### (a) Paragraph 5

Paragraph 5, entitled "Separation Contract," has two primary lines. The first line—which is checked—says "There is no enforceable separation contract."

#### (b) Paragraphs 10 and 11

Paragraphs 10 and 11 separately address the parties' obligations to pay debts. The petitioner's (Juli's) debts are treated in paragraph 10, and the respondent's (Yanke's) are treated in paragraph 11. Those paragraphs are otherwise identical. Each has the same seven lines with checkboxes.

The second line—which is checked—requires Juli to "pay the debts that are now in his/her name." In the context of other elements of the decree, which I will discuss, I read the second line's requirement that she pay debts "in her name" to apply to debts that were hers and not also joint debts, in other words, debts that were only hers. The Jeep debt was a joint debt and not only hers.

The third through fifth lines are unchecked. The third line refers to a possible separation contract requiring that one of the parties pay specified debts. The fourth refers to debts listed in a possible exhibit attached to the divorce decree. And the fifth refers to possible debts listed in a table in the

Page 9 – MEMORANDUM DECISION

paragraph. Any of those three lines could have been used to make Juli responsible for the joint Jeep debt. But that did not happen.

The sixth line says, "the court does not have jurisdiction to divide debts." It is checked in both paragraph 10, applicable to Juli, and paragraph 11, applicable to Yanke. I read that line to mean that the decree neither requires either party to pay any debt owed only by the other nor imposes an obligation that either party pay a joint debt. Here, the decree did not impose on either party any obligation to pay a joint debt or to reimburse the other for paying a debt. Thus, the decree did not require Juli to pay the Jeep debt or to reimburse Yanke for his payment of it.

### (c)     Paragraph 12

Paragraph 12 is entitled "Debt Collection (hold harmless)." It has two lines. If the second line is checked, each party who is required by the decree to pay a debt must hold the other harmless from "any collection action about the debt." If an obligor does not pay and the other party does pay, then the obligor must reimburse the payor. If the first line is checked, the second line does not apply.

Here, the first line of paragraph 12 is checked, and the second is not. Because the decree did not order either party to pay a debt, paragraph 12 has no effect. Even if the decree had ordered Juli to pay the Jeep debt, the parties' checking of the first line and not the second would indicate the

Case 23-06007-dwh    Doc 43    Filed 10/11/23

opposite of the second-line text: that the decree does not require that she hold Yanke harmless from that debt.

### D. Analysis

Until the divorce decree was entered, Juli's agreement to make the payments on the Jeep and refinance that debt constituted a debt to Yanke, a former spouse, that she incurred in the course of the parties' separation or in connection with a separation agreement. Her agreement was a separation agreement within the meaning of 523(a)(15). Had there been no divorce, her debt to him would have been nondischargeable.

But Juli's agreement is also a state-law separation contract. The writing introduced by Yanke briefly states the agreement, albeit briefly, making the agreement a written separation contract. Because the agreement is not addressed in the decree, it merged into and did not survive entry of the decree. That result follows from the decree text, case law, and statutes.

In paragraph 5, the parties said that "[t]here is no enforceable separation contract." In paragraph 10, the parties did not check any of the third through fifth lines, which could have been used to make Juli responsible for the Jeep debt. They selected paragraph 10's sixth line, saying that the court lacks jurisdiction to divide debts—in other words, that the decree did not require her to pay the Jeep debt. And even if the decree had ordered her to pay the Jeep debt, the parties did not select the second line of paragraph 12, which could have been used to order her to hold him harmless from that debt.

Page 11 – MEMORANDUM DECISION

Yanke's objection to admission of the decree—that it was prepared hastily and mistakenly made no reference to their debts—concedes that the form should have but did not address Juli's debt to him.

Under *Kelly-Hansen*, a separation contract not addressed in a divorce decree merges into the decree. So Juli's agreement merged into and did not survive entry of the decree.

Finally, the parties failed to comply with the requirement of 26.09.070(5) that any separation contract "be set forth in the decree . . ., or filed in the action or made an exhibit and incorporated by reference . . .." The agreement was not set forth in the decree or incorporated by reference into the decree. I read 26.09.070(5) not to allow it to be satisfied simply by filing the contract and not also incorporating it by reference in the decree. For that reason, although I have no evidence that the agreement was not filed, I conclude that filing it alone would not have satisfied 26.09.070(5). The parties' failure to comply with 26.09.070(5) prevented the court from performing its obligation under 26.09.070(3) to dispose of the parties' liabilities in accordance with any separation contract.

The agreement did not survive entry of the decree.

## V.     Conclusion

I will enter judgment for Juli, determining that her debt to Yanke did not survive the parties' divorce and that she does not owe him a debt that was not discharged in her bankruptcy case.

In the complaint, Justin's name appears only in the caption. The complaint does not otherwise mention, much less seek relief against, Justin. In the adversary proceeding cover sheet that Yanke submitted with the complaint, the sole name in the "defendant" box is Juli's.

Both the court-maintained docket of this action and the summons issued by the court[18] list as defendants both Juli and Justin. In Yanke's certification of service of the complaint and summons, he listed both Juli and Justin as addressees of the mailing of summons and the complaint.[19] No other document in this action mentions Justin.

I take Yanke's inclusion of Justin's name in the caption to reflect Justin's status as a debtor (with Juli) in the main case, not as a defendant in this action. It was both necessary and proper for Yanke to include in the caption the names of both debtors.[20] The court misread the complaint to name both debtors as defendants, leading to the inclusion of both debtors' names as defendants in the docket and summons. Yanke's inclusion of both debtors' names in the certification of service was an understandable response to being asked to serve a summons that mentioned both debtors as defendants.

For those reasons, I conclude that Yanke did not intend that Justin be a defendant. I will order that the docket of this action be corrected to remove

---

[18] ECF No. 7.
[19] ECF No. 11.
[20] Fed. R. Bankr. P. 9009(a); Official Form 416D (12/15).

Justin as a defendant, and I have anticipated that correction in the caption of this decision.

###